UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

UNITED STATES OF AMERICA

       -against-

                                                     04 CR 140 (FB)

CONSUELO CARRETO VALENCIA,

              Defendant.

------------------------------------------------------------------x


**DEFENDANT'S SENTENCING MEMORANDUM**


                                          **JOHN S. WALLENSTEIN, ESQ.**
                                          **Attorney for Defendant**
                                          **1100 Franklin Avenue**
                                          **Garden City, New York 11530**
                                          **(516) 742-5600**

This memorandum is respectfully submitted on behalf of the Defendant, Consuelo Carreto Valencia, in connection with her sentencing, currently scheduled for October 30, 2009. The defendant pleaded guilty to Count Two of a multi-count Indictment, charging her with violation of 18 U.S.C. § 1591(a)(1) & (a) (2), Sex Trafficking, a Class A felony.

The facts of the case are sufficiently recited in the Presentence Report prepared by the Probation Department, and need not be repeated here at length. Ms. Valencia, along with her two sons and other family members, participated in a conspiracy to transport young Mexican women to the United States for the purpose of prostitution. Her sons brought the women to New York, where the women were forced to engage in prostitution, and the money thus earned was sent back to Mexico to the defendant. It was also alleged that the defendant assisted her sons in keeping the women virtual prisoners in her home in Mexico prior to their being smuggled into the United States.  Both of her sons pleaded guilty to their roles in the conspiracy, and each was sentenced to 50 years imprisonment by this Court.

The defendant initially entered a plea of Not Guilty, and the case proceeded through discovery and extensive negotiations which, it was hoped, would lead to a disposition without trial. Negotiations became stalled and trial was commenced on July 21, 2008, and a

jury was selected. Thereafter, prior to opening statements, the defense and prosecution continued the plea negotiations which had been ongoing prior to trial, and an agreement was reached with the assistance of the Court. The defendant agreed to enter a plea of guilty to Count Two of the Indictment, and the government estimated her Advisory Guideline Range to be Level 33, Criminal History Category I, resulting in a range of imprisonment of 135-168 months. At the time of the plea, on July 22, 2008, the Court promised that the sentence imposed would be within the Advisory Guideline Range and no greater than 168 months, or 14 years. The defendant then entered her plea, which the Court accepted.

The transcript of the plea proceedings on July 22, 2008 has been reviewed by counsel, and appears to accurately reflect the proceedings of that day, and the Court's promise with respect to the sentence which will be imposed. Counsel has reviewed the transcript with the defendant, with the assistance of a Spanish interpreter. A copy of the transcript is submitted herewith for the convenience of the Court.

## **THE PRESENTENCE REPORT**

The Presentence Report prepared by United States Probation Officer Patricia Sullivan is extremely thorough and detailed, running to 41 pages. The report has been translated into Spanish and a copy provided to Ms. Valencia, who does not read, write or speak English. In addition, counsel has met with the

defendant and reviewed the contents of the report, with the assistance of a Spanish interpreter. The PSR is accurate in its discussions of the offense conduct and the defendant's personal history, and the defense has no objections to the report *per se*. However, as noted below, the defense objects to the Advisory Guideline calculations in some respects.

.

## OBJECTIONS TO THE ADVISORY GUIDELINE CALCULATIONS

During the course of the plea proceedings, the Guideline calculations were discussed in some detail, and the written plea agreement also contains the Government's estimate of the Guidelines. In the main, the Guideline estimate is correct, with one significant exception.

The defendant disputes her portrayal as a manager or supervisor of the criminal activity, and thus objects to the 3 point adjustment pursuant to Guideline § 3B1.1(b), PSR ¶ 69. In order for this enhancement to apply, a defendant must exercise some form of supervisory authority over other participants in the criminal enterprise. *United States v. Al-Sadawi,* 432 F.3rd 419 (2nd Circuit, 2005). The only factual assertion in the PSR to support this enhancement is contained within paragraph 43, wherein it is alleged that Ms. Valencia employed Eliu Carreto Fernandez as a driver and would tell him to go to Puebla to pick up money. However, this conduct, even if true, hardly rises to the level of

supervisory authority required for a 3 level enhancement under the guidelines.

The Guidelines do not define the term "supervisor," but the Second Circuit has held that a defendant acts as a "manager or supervisor" of a criminal enterprise involving at least five participants if she exercises some degree of control over others involved in the commission of the offense, or plays a significant role in the decision to recruit or to supervise lower-level participants. *See, Ellerby v. United States,* 187 F.3rd 257 (2nd Circuit 1998), *internal citations omitted.*

The tone of the PSR makes clear, in numerous references to the treatment of the victims by this defendant, that Ms. Valencia exercised control over the activities of <u>victims</u>, but, as Application Note 1 to Guideline § 3B1.1 makes clear, a victim is not a participant. No matter what she may have done in furtherance of the objectives of the conspiracy with regard to the women who were victimized, she was not a supervisor or manager of the other conspirators, who apparently all acted on the orders of Josue and Gerardo, Ms. Valencia's sons. Her two sons were the managers of this criminal enterprise, and it was they who directed the activities of the other conspirators; Ms. Valencia did their bidding, and followed their instructions. Therefore, it is respectfully submitted that the adjustment under 3B1.1(b) is incorrect, and should be deleted. *See Application Notes 1 and 2 to USSG § 3B1.1*

In order to enhance a sentence for the defendant's role in the offense under Guideline § 3B1.1, the District Court must make

specific factual findings which support the enhancement, *United States v. Stevens*, 985 F. 2nd 1175 (2nd Circuit 1993). Ms. Valencia's role in the offense, even accepting the government's assertions, does not warrant an enhancement for being a manager or supervisor, because she did not exercise any supervisory or managerial authority over other members of the conspiracy.

The correct Guideline calculations, therefore, are as follows:

| | |
|---|---:|
| Base Offense Level (2G1.1) | **27** |
| Specific Offense Characteristics (2A3.1(b)(1)) | **+4** |
| Vulnerable Victim (3A1.1) | **+2** |
| **Adjusted Offense Level** | **33** |
| Acceptance of Responsibility | **-3** |
| **TOTAL OFFENSE LEVEL** | **30** |

In Criminal History Category I, the range of imprisonment is 97-121 months. We respectfully submit that this is the appropriate range of imprisonment, and urge the Court to accept this calculation and sentence the defendant within or below that range. As noted above, at the time of the plea the Court promised to impose a sentence no greater than 168 months, but indicated that a lesser sentence was possible.

## SENTENCING FACTORS UNDER 18 USC §3553(a)

In determining the appropriate sentence to impose upon the defendant, the Court is required to apply the factors noted in 18 U.S.C. § 3553(a). These include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the sentencing options available, and the guideline sentencing range. The Court must also consider the need to avoid unwarranted disparity with other defendants similarly situated, and the need to provide restitution to victims.

The nature and circumstances of the offense have been set forth in great detail in the PSR, and the Court is of course quite familiar with the facts and circumstances here, having heard the guilty pleas and imposed sentence upon Ms. Valencia's two sons. Therefore, in the interest of brevity, we will rely upon the factual recitations of the PSR, and respectfully incorporate them by reference hereat.

Likewise, the history and characteristics of the defendant herself are set forth in the PSR. It is worth noting, however, that Consuelo Carreto Valencia has had an extremely difficult and tragic life. She has lived her entire life in Mexico, in a small town, where with her late husband she scratched out a living and raised her children. Her son Israel was kidnapped and later killed, even after a ransom was paid. The loss of a child, under these horrendous and violent circumstances, is a tragedy for any parent, all the more so for a woman who doted on her son. Her husband died in 1999,

when he became ill and passed away within about a month. After the murder of her son, her brother died of a sudden heart attack when he learned of his nephew's killing. Her two surviving sons are codefendants and have been sentenced to 50 years each by this Court; as a result, Ms. Valencia will likely never see either of them again. While recognizing that this particular aspect of her tragic life is largely selfmade, it is nonetheless a factor which the Court ought to consider, as the loss of a child is untenable to any parent, regardless of the reason.

It is clear that the Court will sentence the defendant to a term of imprisonment. However, a lengthy term serves no purpose except punishment, and while this is a legitimate goal of sentencing, it is not the only one. Therefore, we urge the Court to show mercy and be lenient in the imposition of sentence.

## **CREDIT FOR TIME IN MEXICO**

The defendant was incarcerated in Mexico for fifteen months prior to being extradited to the United States, and we respectfully submit that she should not only receive credit for that time against the total time she will serve in the custody of the Bureau of Prisons, but she should receive additional credit because of the harsh and inhumane conditions in the Mexican prisons. Medical attention there is nonexistent, and prisoners who wish to eat something beyond bare subsistence rations must bribe people to bring them food. Prisoners are routinely denied access to lawyers, and their living conditions are medieval. While there is clearly nothing that

this Court can do to change that, granting additional credit for the time served there can help.

## CONCLUSION

It is respectfully submitted that, under all of the circumstances of this case, and of the defendant's life history, a sentence of 97 months, the lower end of the Guidelines as calculated herein, is appropriate.

Respectfully submitted,

/S/ *JOHN S. WALLENSTEIN*

JOHN S. WALLENSTEIN