1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
       UNITED STATES OF AMERICA,    :   04-CR-140(FB)
4                                   :
                                    :   U.S. Courthouse
5                                   :   Brooklyn, New York
            -against-              :
6                                   :   TRANSCRIPT OF
                                    :   SENTENCING
7                                   :
                                    :
8      CONSUELO VALENCIA,           :   October 30, 2009
                                    :   3:15 p.m.
9            Defendant.             :
                                    :
10   - - - - - - - - - - - - - X

11   BEFORE:
                     HONORABLE FREDERIC BLOCK, U.S.D.J.
12
     APPEARANCES:
13
     For the Government:       BENTON J. CAMPBELL, ESQ.
14                             United States Attorney
                               271 Cadman Plaza East
15                             Brooklyn, New York 11201
                               BY:  MONICA RYAN, ESQ.
16                                  Assistant U.S. Attorney

17                                  HILLARY AXAM, ESQ.
                                    Department of Justice
18

19   For the Defendant:       JOHN WALLENSTEIN, ESQ.

20

21

22   Court Reporter:       Holly Driscoll, CSR
                           Official Court Reporter
23                         225 Cadman Plaza East
                           Brooklyn, New York 11201
24                         (718) 613-2274

25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.

*HOLLY DRISCOLL, CSR*
*OFFICIAL COURT REPORTER*

1          THE CLERK:  Criminal cause for sentencing, the

2   United States of America versus Consuelo Valencia.

3          (Interpreter Marsha Gotler sworn by the clerk.)

4          THE CLERK:  I ask counsel to state your appearance.

5          MS. RYAN:  Monica Ryan for the United States here

6   with Hillary Axam from the Department of Justice and Patricia

7   Sullivan is here from the Probation Department.  Good

8   afternoon, Your Honor.

9          THE COURT:  Good afternoon, everybody.

10          MR. WALLENSTEIN:  John Wallenstein for the

11   defendant.  Good afternoon, Your Honor.

12          THE COURT:  We're here to sentence your client

13   today.  Is there any reason why she should not be sentenced

14   today, Mr. Wallenstein?

15          MR. WALLENSTEIN:  No, Your Honor.

16          THE COURT:  Have you gone over the presentence

17   report with her very carefully and the addenda?

18          MR. WALLENSTEIN:  Yes, sir, I have.

19          THE COURT:  Since she is a Spanish speaking person,

20   tell me how you communicated this information to her.

21          MR. WALLENSTEIN:  I visited with her in the jail

22   with the assistance of Jay Carlos Venant who is a court

23   certified Spanish interpreter.  We spent considerable time

24   reviewing the presentence report and the memorandum which I

25   submitted to you, Your Honor.  I have also had an opportunity

1    today to review with her the government's memorandum and the

2    salient points thereof and I am satisfied that my client fully

3    understands the documents that the Court has before it and the

4    ramifications of it.

5            We've gone over the guidelines, the plea proceeding

6    and the Court's promises with respect to that.  I believe she

7    is fully conversant, as much as a layman can be, with all of

8    the concepts that are before Your Honor today and we've spent

9    a considerable amount of time reviewing the sentencing

10   procedures and what it means.

11           THE COURT:  All right.  And based upon your

12   representations, we'll go forward.  I hear nothing contrary

13   from the defendant.

14           Let me tell you what I have in the file.  First,

15   let's refer back to July 22nd, 2008 when I took the plea and I

16   just reviewed it again today, it's rather extensive and we

17   painstakingly addressed the matter and I accepted it.  She did

18   acknowledge that the woman in question was living with her for

19   about a year and she was pregnant, she went out to work as a

20   prostitute and that she was doing that, her sons took her to

21   New York, she received monies, we spent some time talking

22   about that, the monies were for her own personal use, and I

23   did conclude by asking her whether there was any question that

24   she knew that the money came from the prostitution of this

25   woman and the defendant said yes and I accepted the plea.

1          So, in addition to the minutes of July 22nd, 2008, I

2    have as part of my sentencing folder the recommendation of the

3    Probation Department recommending 35 years of incarceration

4    and five years of supervised release and I assume that you

5    folks have seen that because it is my practice to make that

6    available to counsel.

7          MR. WALLENSTEIN:  Yes, Your Honor, we have.

8          MS. RYAN:  Yes, Your Honor.

9          THE COURT:  We have the underlying presentence

10   report dated June 15th, 2009 and we have the addendum to that

11   presentence report addressing the issue of whether or not a

12   three level enhancement for being a so-called supervisor,

13   manager or leader of a -- that would warrant the three level

14   increase and we'll address that more specifically.

15         I have the defendant's sentencing memorandum from

16   Mr. Wallenstein and -- does it have a date on it?  It was

17   filed October 14th, 2009.

18         I received today just recently a letter in Spanish

19   translated into typewritten English from the defendant and

20   that's dated October 20th.

21         Has the government seen this at all?  Do you wish to

22   see it?

23         MS. RYAN:  We have seen it, Your Honor, Mr. Inelli

24   gave us a copy before court today and we've had the

25   opportunity to review it.

1          THE COURT:  All right, so let me take a look at it.

2          MR. WALLENSTEIN:  Judge, I did not receive a copy of

3     that prior to today, although Mr. Inelli did give me a copy

4     earlier today and I have reviewed it.

5          (Pause.)

6          THE COURT:  All right.

7          So, let the record reflect that I have looked at

8     this and I have it as part of my sentencing file.

9          We went through this in the past.  I have a letter

10    of August 13th just telling me that she -- to inform me that

11    Mr. Wallenstein never visited her again after September 28th,

12    2008.  That's apparently not the case.

13         MR. WALLENSTEIN:  That is not the case.

14         THE COURT:  You explained to me that you met with

15    her just recently and a number of other occasions, you

16    explained the presentence report and all of the information

17    that you articulated before me just a few minutes ago.

18         MR. WALLENSTEIN:  Yes, Your Honor.  We've met

19    on many, many occasions always with the assistance of

20    Mr. Venant.

21         THE COURT:  Then I have a letter here dated

22    November 13th, 2008.  That goes back some time.  It just

23    simply talks about the need to expedite the matter, her

24    eyesight is failing, she wanted to get in touch with her

25    lawyer since she hasn't seen him since September 28th, 2008.

1  Once again, you've seen her subsequent to that date many, many

2  times.

3          MR. WALLENSTEIN:  Oh, yes.

4          THE COURT:  The underlying plea agreement, which

5  I indicated before I accepted, was marked Court Exhibit

6  Number One and it's dated July 22nd, 2008, it's the same time

7  that I accepted the plea, and I just want to note that it

8  estimated an advisory guideline range of 151 to 188 and at

9  that time it did set forth its contention that the defendant

10 was a manager or supervisor of a criminal activity that

11 involved five or more participants.  We want to talk about

12 that a little bit more in a few moments.

13         MS. RYAN:  Your Honor, just so the record is clear,

14 with respect to the plea agreement, the Court is correct that

15 the estimate with two points off for acceptance of

16 responsibility was 151 to 188 but there was some discussion

17 during the plea and at that time the parties all agreed that

18 we'd provide three points off which results in a lower range.

19         THE COURT:  Right, and it would be 135 to

20 168 months.

21         MR. WALLENSTEIN:  That's correct.

22         THE COURT:  So, have I identified everything that I

23 should have in my file?  Is there anything that inadvertently

24 may have been left off?

25         MS. RYAN:  Just the government's memorandum, Your

1   Honor, which I hope you have.

2          THE COURT:  Sorry, that's something I do have and

3   let me get my fingers on it.

4          Well, you know, I don't have it in my file.

5          MS. RYAN:  Your Honor, I'm happy to hand you another

6   copy if you'd like.

7          THE COURT:  I'm quite sure I've seen it but let me

8   take a look at it.

9          That is why we go through all these things very

10  carefully.  Let me see the copy.

11         MS. RYAN:  (Handing.)

12         (Pause.)

13         MR. WALLENSTEIN:  While you're doing that, Judge, I

14  filed an addendum to my sentencing memorandum yesterday after

15  the government's memo.

16         THE COURT:  Yes, I have that.  I left it upstairs.

17         MR. WALLENSTEIN:  Okay.

18         THE COURT:  And it talks about restitution, seeking

19  $75,000.  I've gone over it carefully.

20         MR. WALLENSTEIN:  That's the government's memo,

21  right.

22         THE COURT:  This is the government's memorandum.

23  So, let me acknowledge that I had received this, I just

24  inadvertently left it upstairs because I just finished reading

25  it again.

1      And then we have here what has been handed to me by

2  Mr. Inelli, a preliminary order of forfeiture which I imagine

3  is $75,000, am I right?

4      MS. RYAN:  No, Your Honor, it is a lesser amount

5  because this is an order of forfeiture with respect to the

6  $29,950 that was actually seized from a related co-conspirator

7  in this case and we're asking that the Court sign the order of

8  forfeiture.  Should the Court impose an order of restitution,

9  these funds could be applied to that process.

10      THE COURT:  Is there any question about this order

11  of forfeiture?  This is the first I'm seeing it.

12      MS. RYAN:  I apologize, Your Honor, I was neglectful

13  in my duties and I received it today from the people in my

14  office who handle these things.

15      THE COURT:  I know nothing about it.

16      MS. RYAN:  I'm happy to give the Court some

17  background if you'd like.

18      THE COURT:  Where is this $29,950?

19      MS. RYAN:  It's being held by ICE, Your Honor.  It

20  was seized by federal agents during the course of this case.

21      THE COURT:  But that was in respect to her sons or

22  in respect to her?  Was it seized from her?

23      MS. RYAN:  It was not seized from her.  It was

24  seized from another defendant in this case who owned and

25  operated a brothel at which the victims in this case were

1    forced to work in prostitution.

2            THE COURT:  Why didn't we sign that order of

3    forfeiture during that person's sentence so it was seized from

4    him?

5            MS. RYAN:  That would have been a better practice,

6    Your Honor, at that time.  That defendant was being sentenced

7    much earlier than some of the other defendants in the case and

8    we thought we might be able to find more money, we thought we

9    might be able to apply it to other defendants and, candidly,

10   Your Honor, it fell off our radar screen.

11           THE COURT:  All right, look, I'm uncomfortable in

12   just doing this willy-nilly at the 11th hour.

13           MS. RYAN:  I understand, Your Honor.  If you prefer,

14   I had extensive conversations with Ms. Nandon in my office who

15   is the expert in all things forfeiture and she explained to me

16   that while even though this money wasn't physically seized

17   from this defendant, because it was seized during the same

18   conspiracy and it involves conduct involving the same victims

19   it can still be forfeited --

20           THE COURT:  I don't know that.

21           MS. RYAN:  I'm happy, if the Court will permit us,

22   to provide some briefing on that and we can provide that for

23   the Court.

24           THE COURT:  She's pled to one specific count.

25           MS. RYAN:  That's correct, Your Honor.

1    THE COURT:  And I know the government's approach is

2  that, you know, we should consider all of these other people

3  as well -- well, actually you're not taking that position.

4    MS. RYAN:  We can't because of the plea agreement.

5    THE COURT:  Why don't we limit the forfeiture to the

6  same plea agreement.

7    MS. RYAN:  I'm happy to do that, Your Honor.  I will

8  state, just for the Court's information, the count to which

9  this defendant pled guilty, Count Two, was the sex trafficking

10  of a victim identified as Jane Doe Number One and I can tell

11  the Court that Jane Doe Number One worked at the brothel from

12  which these proceeds were derived.

13    THE COURT:  I don't know that.

14    MS. RYAN:  So, if the Court would permit us to

15  submit a letter to that effect, I'd appreciate it.

16    THE COURT:  This is somewhat far removed.  She comes

17  from Mexico.  You're asking that I sign a preliminary order of

18  forfeiture in respect to her sentence based upon the fact that

19  these monies were found in the possession of somebody else who

20  was previously sentenced.

21    MS. RYAN:  Yes.

22    THE COURT:  But somehow the government inadvertently

23  just did not attend to the forfeiture aspects of it.  I'm not

24  comfortable with doing that, okay.

25    So, let's move on now.  Let's make our sentencing

1   calculations.  We turn to page 32.

2          The only tension I glean from the submissions

3   centers around whether there ought to be a three level

4   adjustment because the defendant allegedly managed or

5   supervised a criminal activity which involved more than five

6   individuals but that's not the case here.  You're talking

7   about whether it was otherwise extensive.  That five or more

8   individuals would qualify for a -- well, I think a three level

9   uptick or four level if she was also the leader I guess,

10  right, but I don't see five people here.

11         MS. RYAN:  Your Honor, my reading of the guidelines

12  is that the reference to the five or more individuals involves

13  members of the criminal activity whether or not they're

14  charged along with this defendant or not.  I will state for

15  the record that this defendant was charged in a multi-

16  defendant indictment which included four defendants who have

17  since pled guilty and have been convicted by the court.

18         THE COURT:  That's correct.

19         MS. RYAN:  Have been sentenced by the court, excuse

20  me.  There are also other co-conspirators, some of --

21         THE COURT:  There are all sorts of people out there

22  but I have to make a determination that she herself was a

23  manager or supervisor --

24         MS. RYAN:  Yes, and we contend --

25         THE COURT:  -- of five or more people and the fact

1    that you say so doesn't mean it's true.

2          MS. RYAN:  No, Your Honor, I don't believe that the

3    guidelines require that she supervised five or more people.

4          THE COURT:  Manager or supervisor.

5          MS. RYAN:  Of a criminal activity that involved five

6    or more people, so the five people is with respect to the

7    other criminal participants.  She did in fact supervise some

8    of those other people.  As we noted in our submission to the

9    Court, at least two of the people who have appeared before

10   this Court she did actively supervise, they ran errands for

11   her, they drove and picked up money, they drove some of the

12   victims to various brothels.  She also was in charge of

13   extensive parts of the organization.

14         THE COURT:  Doesn't 3B1.1 also refer to "or

15   otherwise --

16         MS. RYAN:  I'm sorry?

17         THE COURT:  Isn't there an "or otherwise extensive"

18   prong to that?

19         MS. RYAN:  Counsel is alerting me to application

20   note 12 that clearly states to qualify for a role adjustment

21   under Section 3B1.1, as long as someone supervised one or more

22   of the other criminal participants, they can qualify for the

23   enhancement for leadership role whether it is plus 3, 4 or 5

24   under the guideline.

25         THE COURT:  It doesn't require five?

1              MS. RYAN:  No, it just requires five other

2    participants to be involved in the activity such that there

3    could be a leader or a follower I suspect is the policy

4    rationale behind the guideline.

5              THE COURT:  Or otherwise extensive.

6              MS. RYAN:  Yes.

7              THE COURT:  Would this fall under that prong?

8              MS. RYAN:  Yes.

9              THE COURT:  It seems to be very extensive here.

10             MS. RYAN:  Absolutely.

11             THE COURT:  Her involvement here with the victim

12   would then be considered in assessing whether it was otherwise

13   extensive.

14             MS. RYAN:  Yes.

15             THE COURT:  Supervision of the victim, you can't

16   include her as one of the five but I imagine that can be

17   considered in assessing whether or not you're dealing with

18   activity that was otherwise extensive.

19             MS. RYAN:  That's correct, Your Honor.

20             MR. WALLENSTEIN:  I, with respect, don't agree with

21   that.  I don't disagree with the government's analysis that as

22   long as the conspiracy involves five or more people, that a

23   person who is a manager can be enhanced under 3B1.1.

24   Obviously, I dispute factually whether Ms. Valencia is in fact

25   a manager but that's not the issue now.  Her supervision of

1    the victims and her interaction with the victims is not what

2    qualifies anyone for a managerial role, they have to interact

3    and supervise co-conspirators or employees of the conspiracy

4    in order for them to be considered a manager.

5          THE COURT:  Here's what 3B1.1(b) says:  If the

6    defendant was a manager or supervisor but not an organizer or

7    leader and the criminal activity involved five or more

8    participants or is otherwise extensive; why would not this

9    criminal activity involve five or more participants?

10         MR. WALLENSTEIN:  It does.  I don't dispute that

11   fact.  I dispute what she did in terms of whether or not she

12   was a manager.

13         THE COURT:  She has to be a manager and a supervisor

14   and the criminal activity must involve five or more

15   participants.

16         MR. WALLENSTEIN:  Right.

17         THE COURT:  So, a manager or supervisor would

18   qualify as long as she managed or supervised even one person.

19         MR. WALLENSTEIN:  If you so find, then she

20   qualifies.

21         THE COURT:  Who did she manage or supervise?

22         MS. RYAN:  Your Honor, as stated in the presentence

23   report, I believe it's either paragraph 39 or --

24         THE COURT:  The driver.

25         MS. RYAN:  There were two other members of the

1   conspiracy that were mentioned, the drivers, yes.

2        THE COURT:  How do I know that?  I mean you say that

3   but how do I know that?

4        MS. RYAN:  Well, Your Honor, first of all, I'll just

5   note that the defendant didn't object to any of these factual

6   assertions in the presentence report.  I know from my

7   experience with this case obviously.

8        THE COURT:  We're here to sentence this particular

9   person.

10       MS. RYAN:  Understood.

11       THE COURT:  So, you have the presentence report,

12  you're making a proffer that the government can establish that

13  if necessary.

14       MS. RYAN:  Yes.

15       THE COURT:  And the defendant is not challenging

16  that.

17       MS. RYAN:  Correct.

18       MR. WALLENSTEIN:  Well, I wouldn't say I'm not

19  challenging that.  My challenge --

20       THE COURT:  Do you want to have a hearing?

21       MS. RYAN:  Your Honor, in her brief she admits it, I

22  think it is on page four.

23       THE COURT:  Read it to me.

24       MS. RYAN:  At the bottom of page four, according to

25  the filing stamp that comes across the top of the page, it is

1   the second paragraph under the section that says objections to

2   the advisory guidelines calculation, she talks about the only

3   factual assertion in the PSR to support --

4           THE COURT:  Go slow.

5           MS. RYAN:  I'm sorry.  The only factual assertion in

6   the PSR to support this enhancement is contained within

7   paragraph 43 wherein it is alleged that Ms. Valencia employed

8   Eliu Carreto Fernandez --

9           THE COURT:  You're going so fast he's questioning

10  whether or not that's true.

11          MS. RYAN:  I note that he does not, however, dispute

12  the paragraphs following in 44 and 45 of the PSR which

13  references another employee effectively of this defendant,

14  Eloy Carreto Reyes.  I think that's an uncontested fact.

15          THE COURT:  Well, it seems that way.  Is that true,

16  Mr. Wallenstein?

17          MR. WALLENSTEIN:  Let me take a look, Judge, 44.

18          (Pause.)

19          MR. WALLENSTEIN:  I read the assertions in the

20  presentence report with respect to Eloy Carreto Reyes in

21  paragraphs 44 and 45 to mean that he was -- the only assertion

22  here that respects my client is that Mr. Reyes worked for my

23  client for approximately four years.  It then goes on to say

24  he completed many tasks for Gerardo Flores Carreto and Josue

25  Flores Carreto and that he drove the victims of Gerardo and

1  Josue, that he did things with the victims, he accompanied

2  Gerardo and he saw the victims at my client's home.  That

3  doesn't mean she supervised him in any way, shape or form so I

4  saw no reason to address that.

5       THE COURT:  You functioned as a good lawyer because

6  it equally can be referable to this person's activities for

7  the sons and it's not so clear that he was working at her

8  direction and involved in this criminal activity on her

9  behalf.  I'm troubled by that.

10       MS. RYAN:  I understand what you're saying.  I can

11  represent as an officer of the court that the government has

12  information that during the course of his employment, Eloy

13  Carreto Reyes's employment by this defendant he drove her

14  personally to pick up wire remitting money that had been sent

15  from New York as part of this conspiracy.  That was one of the

16  many tasks he performed.  Sometimes the defendant would

17  provide him with the -- I don't know if it is a passport.

18       THE COURT:  I'm not going to give any three level --

19  just the mere fact that he's acting as a chauffeur doesn't

20  satisfy me.

21       MS. RYAN:  It is not a chauffeur, Your Honor.  He's

22  a member of the conspiracy along with the defendant, along

23  with her sons and --

24       THE COURT:  You're saying it.

25       MS. RYAN:  -- he's picking up criminal proceeds

1   which is the government's main hook for this defendant's

2   culpability under the statute.

3          THE COURT:  You're saying it.

4          MS. RYAN:  She's admitted during her guilty plea to

5   accepting money from her sons that was sent back from New

6   York.  That's all part and parcel of this.

7          THE COURT:  I don't know whether she was a manager

8   or supervisor of somebody --

9          MS. RYAN:  She also harbored --

10         THE COURT:  Listen to me.

11         MS. RYAN:  I'm sorry, Your Honor.

12         THE COURT:  -- who went to pick up somebody and who

13  even got the money.  It just sounds to me like he's a pick-up

14  person just picking up money.

15         MS. RYAN:  The government could certainly prove

16  differently at a hearing, Your Honor.

17         THE COURT:  How important are those three points to

18  you?  You want to have a hearing here to establish those three

19  points, is that what you want to do?  I'm not satisfied that

20  you've given me anything here that warrants it.  The woman is

21  down there, she admitted to being involved with this woman,

22  that the woman went to New York, she admits that she engaged

23  in prostitution, she admits that she got proceeds from her

24  activities as a prostitute so I accepted, you know, her plea

25  but, you know, and it may well be that she's involved with

1    four or five other people, it may well be that she has all

2    sorts of managerial responsibilities but I'm obliged to

3    sentence her according to the plea so that's what I'm going to

4    do, so I'm not going to give any adjustment for role in the

5    offense.

6              That means we're dealing with an adjusted offense

7    level of 33, three levels off for acceptance, we have an

8    offense level of 30 which is still a rich offense level and

9    with a Criminal History Category of I, we're dealing with a

10   range of incarceration of, let me be precise, I think it is 97

11   to 121 months, right?

12             Okay.  Are we correct about that?

13             MS. RYAN:  Yes, Judge.  That calculation is

14   correct, Your Honor, but to answer the Court's question about

15   whether the government would like a hearing, I'm seriously

16   considering that question at the moment because I will tell

17   the Court in all candor that when this guilty plea happened on

18   the morning that the trial was to commence the government felt

19   that the bargain -- that the benefits of the bargain that the

20   defendant received at that time, while that number was

21   acceptable, I'm having a hard time thinking that an

22   appropriate sentence is within the guideline range that the

23   Court currently calculated so I'm wondering if perhaps we

24   should have a hearing.  I can bring a witness here next week

25   to have a hearing on this.

1        THE COURT:  Who is that witness going to be?  What

2   will that witness testify to?

3        MS. RYAN:  Eloy Carreto Reyes, to the employment by

4   this defendant and the purpose of the activities that he

5   engaged in and how those were important.

6        THE COURT:  He's in jail?

7        MS. RYAN:  Yes, Your Honor.

8        THE COURT:  He would testify presumably that she was

9   the one that instructed him and directed him to go pick up the

10  money?

11       MS. RYAN:  Yes.

12       THE COURT:  Mr. Wallenstein, what says you?

13       MR. WALLENSTEIN:  I thought you were right when you

14  denied the three level enhancement the first time but --

15       THE COURT:  I can't deny the government if the

16  government wants an opportunity to establish this.

17       MR. WALLENSTEIN:  I think you can't.

18       MS. RYAN:  Your Honor, I will say, I mean we could

19  have prepared for such a hearing today had we understood that

20  this was going to be -- maybe I should have brought the

21  witness.

22       THE COURT:  Well, truth of the matter, look, we're

23  talking about sentencing somebody to a long period of

24  incarceration, okay.  Mr. Wallenstein did pose that as a

25  singular objection.

1          MS. RYAN:  Yes, he did.

2          THE COURT:  So, you certainly were put on notice.

3          MS. RYAN:  Yes, I was.

4          THE COURT:  He was not agreeing with the fact that

5     three levels should be added.

6          MS. RYAN:  Yes, Your Honor.

7          THE COURT:  It's not coming out of left field.

8          MS. RYAN:  No, it is not, Your Honor.  I didn't mean

9     to imply that at all.  I thought that the government's

10    response and our reading of the guideline made it clear that

11    she was deserving of this enhancement but I certainly

12    understand the --

13         THE COURT:  If I accept everything in here,

14    she's knee deep as the matriarch and she had all these five

15    people and she was constantly doing this and she was

16    constantly supervising and managing it, I agree with you, it

17    may be the case but it is not the way the government has

18    presented her.

19         MS. RYAN:  I understand, Your Honor.  I will just

20    note for the record that the defendant did not argue with any

21    of those facts that the Court just recounted, her status as

22    matriarch and the otherwise extensive involvement she had in

23    the criminal activity to which she pled guilty.

24         THE COURT:  Those are conclusory statements.  I

25    think we should be very circumspect to make sure a proper

1    sentence is being administered in this case under the law.

2          So, if you want to have this put over to next

3    week for purposes of bringing him in here, I'll give you

4    that opportunity to do so in light of the fact that

5    Mr. Wallenstein has challenged those three levels and I think

6    the government has the right to meet that challenge by

7    introducing evidence.

8          MR. WALLENSTEIN:  I don't have a problem with that,

9    assuming that I get a little bit of time to prepare for

10   cross-examination of the witness, something in the nature of

11   3500 material which I imagine is available.

12         MS. RYAN:  I think you have it already, as a matter

13   of fact, we provided it in context with the course of the

14   trial.

15         MR. WALLENSTEIN:  All right then, that's fine --

16         MS. RYAN:  I can give you another set.

17         MR. WALLENSTEIN:  -- if that's the case.

18         THE COURT:  Let's set it down for the hearing.

19   Mr. Wallenstein, this it not an easy cup of tea to deal with,

20   so he wants to do the best he can as defense counsel.  In the

21   course of this the record will establish that the defendant is

22   getting very effective counsel.

23         MS. RYAN:  I don't dispute that, Your Honor, I

24   agree.

25         MR. WALLENSTEIN:  I appreciate that.

1          THE COURT:  Off the record so we can get a date for

2     this hearing off the record.

3          (Discussion held off the record.)

4          THE COURT:  November 20th, three o'clock.  The

5     sentence is adjourned until then.

6          THE CLERK:  November 20th at three o'clock.

7          MS. RYAN:  Thank you, Your Honor.

8          MR. WALLENSTEIN:  Thank you, Judge.

9          (Time noted:  3:50 p.m.)

10          (End of proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25